1
2
3
4
5
6
7
8

# UNITED STATES DISTRICT COURT

9

EASTERN DISTRICT OF CALIFORNIA

10
11

| | |
|---|---|
| JUAN P. ORTIZ, | Case No. 1:13-cv-01792-GSA |
| Plaintiff, | **ORDER REGARDING PLAINTIFF'S SOCIAL SECURITY COMPLAINT** |
| v. | |
| CAROLYN W. COLVIN, Acting Commissioner of Social Security, | |
| Defendant. | |

12
13
14
15
16
17
18

### I.    INTRODUCTION

19     Plaintiff Juan P. Ortiz ("Plaintiff") filed this action seeking judicial review of the final

20  decision of Defendant Commissioner of Social Security ("Defendant" or "Commissioner")

21  denying Plaintiff's application for disability insurance benefits pursuant to Title II and for

22  supplemental security income pursuant to Title XVI of the Social Security Act.  (ECF No. 1).

23  The matter is pending before the Court on the parties' briefs, which were submitted without oral

24  argument to the Honorable Gary S. Austin, United States Magistrate Judge.[1]

25     Plaintiff applied for Social Security benefits due to impairments related to a seizure

26  disorder.  For the reasons set forth below, the case is remanded to the ALJ for further

27  proceedings consistent with this opinion.

28  _____

[1] The parties consented to the jurisdiction of a United States Magistrate Judge.  (ECF Nos. 7 & 8).

1

**II.      SUMMARY OF THE ADMINISTRATIVE PROCEEDINGS**

2

**A.  Procedural History**

3   In a decision dated February 24, 2003, Plaintiff was found disabled as of October 22,

4   2001, and thus entitled to disability insurance benefits pursuant to Title II of the Social Security

5   Act and supplemental security income pursuant to Title XVI of the Social Security Act. (AR 60-

6   62).[2]  However, on September 30, 2010, after a continuing disability review was conducted, the

7   Social Security Administration determined that Plaintiff was no longer disabled as of October 1,

8   2010. (AR 152-159). Plaintiff requested reconsideration of the denial on or around October 12,

9   2010. (AR 160). Plaintiff's request for reconsideration was denied on August 11, 2011. (AR 192-

10   202). Plaintiff requested a hearing on or around October 31, 2011. (AR 209-211).

11   On July 17, 2012, a hearing took place before Administrative Law Judge Danny Pittman

12   ("the ALJ"). (AR 31-55). Plaintiff was represented by counsel and testified at the administrative

13   hearing. (AR 31-55). In a decision issued on August 24, 2012, the ALJ found that Plaintiff's

14   disability ended as of October 1, 2010. (AR 12-22). Plaintiff filed an appeal of this decision with

15   the Appeals Council. On August 28, 2013, the Appeals Council denied Plaintiff's request for

16   review of the ALJ's decision, rendering the ALJ's decision the final decision of the

17   Commissioner. (AR 4-6).

18

**B.  The Disability Determination Standard and Process**

19   To qualify for benefits, a claimant must establish that he or she is unable to engage in

20   substantial gainful activity due to a medically determinable physical or mental impairment which

21   has lasted or can be expected to last for a continuous period of not less than twelve months. See

22   42 U.S.C. § 423(d)(2)(A). An individual shall be considered to have a disability only if:

23
24
25
26

> . . . his physical or mental impairment or impairments are of such severity that
> he is not only unable to do his previous work, but cannot, considering his
> age, education, and work experience, engage in any other kind of substantial
> gainful work which exists in the national economy, regardless of whether such
> work exists in the immediate area in which he lives, or whether a specific job
> vacancy exists for him, or whether he would be hired if he applied for work.

27

28   ---

[2] References to the Administrative Record are designated as "AR," followed by the appropriate page number.

1  42 U.S.C. § 423(d)(2)-(3), 1382c(a)(3)(B), (D).

2        To achieve uniformity in the decision-making process, the Commissioner has established

3  an eight-step process for evaluating a claimant's Title II claim and a seven-step process for

4  evaluating a claimant's Title XVI claim. 20 C.F.R. § 404.1594, 404.1520, and 416.920. The ALJ

5  proceeds step by step in order and stops upon reaching a dispositive finding that the claimant is

6  or is not disabled. 20 C.F.R. § 404.1520(a)(4) and 416.920(a)(4).

7        The first step for the Title II claim is to determine whether the claimant is presently

8  engaging in substantial gainful activity. 20 C.F.R. § 404.1594(f)(1). If so, the claimant is no

9  longer disabled. 20 C.F.R. § 404.1594(f)(1). The performance of substantial gainful activity is

10  not a factor used to determine if the claimant's disability continues for a Title XVI claim. 20

11  C.F.R. § 416.994(b)(5). The ALJ found that Plaintiff had not engaged in substantial gainful

12  activity since October 1, 2010, the date the claimant's disability ended. (AR 14).

13        The second step for the Title II claim and first step for the Title XVI claim is to determine

14  whether the claimant has an impairment or combination of impairments which meets or

15  medically equals an impairment listed in 20 C.F.R. Pt. 404, Subpart P, Appendix I of the Social

16  Security regulations. 20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925, and

17  416.926. If the claimant does, the disability continues. 20 C.F.R. § 404.1594(f)(2) and

18  416.994(b)(5)(i). The ALJ identified a seizure disorder as a severe impairment that Plaintiff

19  continued to have as of October 1, 2010. (AR 14-15). However, the ALJ determined that the

20  severity of Plaintiff's impairment did not meet or exceed any of the listed impairments. (AR 14).

21        At step three for a Title II claim and step two for a Title XVI claim, the ALJ must

22  determine if medical improvement has occurred which results in a decrease in the medical

23  severity of the claimant's impairments. 20 C.F.R. § 404.1594(f)(3) and 416.994(b)(5). If so, the

24  analysis proceeds to the fourth step for the Title II claim and the third step for the Title XVI

25  claim. The ALJ determined that medical improvement occurred as of October 1, 2010. (AR 14).

26        At step four for the Title II claim and step three for the Title XVI claim, the ALJ must

27  determine if any medical improvement is related to the ability to work. 20 C.F.R. §

28  404.1594(f)(4) and 416.994(b)(5)(iii). Medical improvement is related to the ability to work if it

1    results in an increase in the claimant's capacity to perform basic work activities. 20 C.F.R. §

2    1594(b)(3) and 416.994(b)(1)(iii). If it does, the analysis proceeds to the sixth step for the Title II

3    claim and fifth step for the Title XVI claim. The ALJ determined that claimant's medical

4    improvement is related to the ability to work because medication controls the claimant's seizures

5    to the point that he is able to do some of the jobs that are available in significant numbers in

6    California and in the national economy. (AR 14). Therefore, the analysis proceeded to the sixth

7    step for the Title II claim and the fifth step for the Title XVI claim.

8         At step six for the Title II claim and step five for the Title XVI claim, the ALJ must

9    determine whether the claimant's impairments in combination are severe. 20 C.F.R. §

10   404.1594(f)(6) and 416.994(b)(5)(v). If not, the claimant is no longer disabled. If they do, the

11   analysis proceeds to the next step.

12        At step seven for the Title II claim and step six for the Title XVI claim, the ALJ must

13   assess the claimant's residual functional capacity (RFC) and determine if he or she can perform

14   past relevant work. 20 C.F.R. § 404.1594(f)(7) and 416.994(b)(5)(vi). If the claimant has the

15   capacity to perform past relevant work, the claimant is no longer disabled. If not, the analysis

16   proceeds to the last step. Based on a review of the record, the ALJ determined that as of October

17   1, 2010, Plaintiff has the RFC to perform work without exertional limitation and to perform

18   simple, routine tasks. (AR 15). The ALJ further determined that Plaintiff must avoid ladders,

19   ropes, scaffolds, and even moderate exposure to hazards, but he can occasionally climb ramps

20   and stairs. (AR 15). The ALJ then found that Plaintiff "is capable of performing past relevant

21   work as a cleaner, industrial-janitor," both as it is actually and generally performed. (AR 20).

22        At step eight for the Title II claim and step seven for the Title XVI claim, the ALJ must

23   determine whether the claimant can perform any other substantial gainful activity. 20 C.F.R. §

24   404.1594(f)(8) and 416.994(b)(5)(vii). If so, the claimant is no longer disabled. If not, the

25   claimant's disability continues. The ALJ found that Plaintiff could perform other jobs that exist

26   in significant numbers in the national economy. (AR 21).

27        Therefore, the ALJ concluded that Plaintiff's disability ended on October 1, 2010, and

28   that Plaintiff has not become disabled again since that date. (AR 21).

1

**III.    STANDARD OF REVIEW**

2      Under 42 U.S.C. § 405(g), this Court reviews the Commissioner's decision to determine

3  whether (1) it is supported by substantial evidence and (2) it applies the correct legal standards.

4  See Carmickle v. Commissioner, 533 F.3d 1155, 1159 (9th Cir. 2008); Hoopai v. Astrue, 499

5  F.3d 1071, 1074 (9th Cir. 2007).

6      "Substantial evidence" means more than a scintilla, but less than a preponderance.

7  Thomas v. Barnhart, 278 F.3d 947, 954 (9th Cir. 2002).  It is "relevant evidence which,

8  considering the record as a whole, a reasonable person might accept as adequate to support a

9  conclusion."  Id.  Where the evidence is susceptible to more than one rational interpretation, one

10  of which supports the ALJ's decision, the ALJ's conclusion must be upheld."  Id.

11

**IV.    Discussion**

12
**A.  Relevant Medical Evidence**

13
**i.   Dr. Michael Froehler**

14

15      In this case, Dr. Michael Froehler, M.D., an examining physician, authored a summary

16  report of Plaintiff's neurological consultation dated July 17, 2010.  (AR 456-458).  Dr. Froehler

17  noted that Plaintiff complained of "seizures" and "increasing memory difficulty."  (AR 456).  Dr.

18  Froehler noted that Plaintiff had "great difficulty with registration and recall, specifically he has

19  significant difficulty with encoding new information."  (AR 457).  However, he also noted that

20  Plaintiff "is able to register three digit spans but cannot do four digit spans or greater."  (AR

21  457).  Dr. Froehler further noted that Plaintiff "was unable to encode a new name and address.

22  His registration is one out of five."  (AR 457).  Dr. Froehler diagnosed Plaintiff with epilepsy

23  and anterograde amnesia.  (AR 458).  Dr. Froehler concluded:

24                "[Plaintiff] has great difficulty with encoding new information.
                  . . . Based on these findings, he does have significant impairments.
25                First and foremost he does continue to suffer from epilepsy and
                  therefore seizure precautions should be taken and he should not be
26                allowed to drive heavy machinery or operate a motor vehicle. He
                  should also avoid ladders and climbing. With regard to the
27                memory difficulty, he does have substantial impairment in this
                  regard as well and will need aids in order to encode new
28                information.

1

2  (AR 458).

3                          **ii.  Dr. Richard Engeln**

4        Richard Engeln, Ph. D., a clinical psychologist, conducted a psychosocial evaluation of

5  the Plaintiff pursuant to a referral by the Department of Social Services, Disability Evaluation

6  Division.  Dr. Engeln wrote that "Verbally, cognitively, and socially [Plaintiff] appears capable

7  of entry level job assignment." (AR 486). Dr. Engeln's report identified that Plaintiff performed

8  "poor[ly] on auditory memory materials, but generally within normal limits," and his "working

9  memory was measured low average." (AR 484-485). Dr. Engeln also identified Plaintiff's

10 Immediate Auditory Memory as 53, Delayed Auditory Memory as 55, and Auditory Recognition

11 Delayed as 55, which Dr. Engeln described as "in the moderate range of mental retardation and

12 appeared to reflect [Plaintiff's] concentration style of shutting down and withdrawing when

13 multiple units of information were presented at one time." (AR 485). Dr. Engeln, after

14 considering Plaintiff's deficiencies in his ability to understand and remember detailed or

15 complex instructions, found that Plaintiff had "mild to moderate restrictions around work

16 history" for understanding and remembering detailed or complex instructions. (AR 486).  Dr.

17 Engeln noted:

18        Understand and remember very short and simple instructions: *No restrictions*
          Understand and remember detailed or complex instructions: *Mild to moderate*
19        *restrictions around work history*
          Carry out simple instructions: *No restrictions*
20        Attend and concentrate: *No restrictions*
          Interact with the public, coworkers, and supervisor: *No restrictions*
21        Perform work activities without special or additional supervision: *No restrictions*
          Adapt to the usual stresses encountered in a work setting: *No restrictions*
22        Be aware of normal hazards in the workplace and react appropriately: *No*
          *restrictions*
23        Use public transportation and travel to unfamiliar places: *No restrictions*
          Manage benefits in his/her own interest: *No restrictions*
24        *Primary restrictions to any of the above dimensions would be related to medical*
          *issues around seizure diagnosis.*
25

26 (AR 486).

27                          **iii.  Dr. M. Vea**

28        Dr. M. Vea, MD, a non-examining physician completed a psychiatric review technique

1    form which indicated that Plaintiff had moderate limitation in maintaining concentration,

2    persistence, or pace. (AR 501). Dr. Vea found that Plaintiff had a mild degree of limitation in

3    activities of daily living and maintaining social functioning. (AR 501). Dr. Vea found that there

4    have been no episodes of decompensation. (AR 501).

5         Dr. Vea completed a mental residual functional capacity assessment and found that

6    Plaintiff was moderately limited in his ability to understand and remember detailed instructions

7    and carry them out and not significantly limited in his ability to understand and remember very

8    short and simple instructions and carry them out. (AR 504). Dr. Vea concluded that Plaintiff had

9    sufficient understanding and memory for short and simple tasks, had sufficient concentration and

10   persistence for unskilled work, could maintain attention in 2 hour increments, and could tolerate

11   and maintain ordinary schedule without need for close supervision.  (AR 506).

12                              **iv.  Dr. E. Murillo**

13        Dr. E Murillo, MD, a non-examining physician, completed a mental residual functional

14   capacity assessment and found that Plaintiff was moderately limited in his ability to understand

15   and remember detailed instructions and carry them out. (AR 522). Dr. Murillo also found that

16   Plaintiff was not significantly limited in his ability to understand and remember very short and

17   simple instructions and carry them out and in his ability to remember locations and work-like

18   procedures.   (AR 522). Dr. Murillo found that Plaintiff had the ability to concentrate and

19   remember for 2 hour increments, interact with coworkers, supervisors, and the public

20   appropriately, and adapt to simple changes in the work place. (AR 524). As part of the

21   psychiatric review technique form, Dr. Murillo found that Plaintiff had moderate limitations in

22   maintaining concentration, persistence, or pace, and mild limitations in maintaining social

23   functioning and activities of daily living. (AR 533). In a CDR analysis, Dr. Murillo affirmed the

24   prior decision that Plaintiff's mental residual functioning capacity is simple repetitive tasks. (AR

25   539).

26                  **B.  The ALJ's Failure to Reference Opinion Evidence From Dr. Froehler, the**
                    **Consultative Examiner, in his Decision**
27

28        Plaintiff argues that the ALJ erred by failing to address the entire opinion of neurologist

1    Michael Froehler, M.D., which suggested that Plaintiff has "substantial impairment" of his

2    memory and "will need aids in order to encode new information." [3] (ECF No. 14 at 6-8).

3    Specifically, Plaintiff argues that the ALJ's RFC that Plaintiff "is capable of carrying out simple

4    repetitive tasks in the workplace" does not incorporate Dr. Froehler's opinion that Plaintiff has

5    "substantial impairment" of his memory and that he "will need aids to encode new information."

6    (ECF No. 14 at 6-8).  Plaintiff also argues that because an application for Social Security

7    Insurance need not take the possibility of reasonable accommodations for a position into account,

8    the ALJ should have determined whether "aids to encode new information" would have

9    constituted a reasonable accommodation for the purposes of his analysis. (ECF No. 14 at 6-8).

10   Defendant argues that the ALJ properly translated the limitations set forth by Dr. Froehler into an

11   RFC that was consistent with Dr. Engeln, Dr. Murillo, and Dr. Vea. (ECF No.18 at 6-7).

12   Furthermore, Defendant argues that the ALJ did not reject Dr. Froehler's opinion, but

13   contextualized his statement of limitations within the other medical opinion evidence.  (ECF No.

14   18 at 7).

15          A claimant's RFC is "the most [the claimant] can still do despite [his or her] limitations."

16   20 C.F.R. § 404.1545(a)(1) and 416.945(a)(1). When determining the RFC, the ALJ considers

17   the plaintiff's ability to "meet the physical, mental, sensory, and other requirements of work," as

18   described in 20 C.F.R. § 404.1545(b), (c), and (d) and 416.945(b), (c), and (d).  See 20 C.F.R. §

19   404.1545(a)(4) and 416.945(a)(4). At Step Five of the sequential analysis, "the burden shifts to

20   the Commissioner to prove that, based on the claimant's residual functional capacity, age,

21   education, and past work experience, she can do other work." Smolen v. Chater, 80 F.3d 1273,

22   1291 (9th Cir. 1996) (citing Bowen v. Yuckert, 482 U.S. 137, 142 (1987) and 20 C.F.R. §

23   404.1520(f)).

24          When evaluating the mental abilities, the ALJ assesses the "nature and extent of

25   [plaintiff's] mental limitations and restrictions and then determines [plaintiff's] residual

26   functional capacity for work activity on a regular and continuing basis." 20 C.F.R. § 404.1545(c)

27

28   [3] The meaning of Dr. Froehler's statement that Plaintiff has "substantial impairment" of his memory and "will need aids in order to encode new information" is unclear.

8

1    and 416.945(c). There are four broad functional areas in which the ALJ rates the degree of

2    functional limitation resulting from a claimant's mental impairment(s): activities of daily living;

3    social functioning; concentration, persistence or pace; and episodes of decompensation. 20

4    C.F.R. § 404.1520a(c)(3) and 416.920a(c)(3). The ALJ is required to incorporate into his or her

5    written decision pertinent findings and conclusions based on the "special technique." 20 C.F.R. §

6    404.1520a(e)(4) and 416.920a(e)(4).

7            The first three functional areas are rated on a five-point scale of none, mild, moderate,

8    marked, and extreme. 20 C.F.R. § 404.1520a(c)(4) and 416.920a(c)(4). The final functional area

9    is rated on a four-point scale of none, one or two, three, and four or more. Id. The ratings in the

10   functional areas correspond to a determination of severity of mental impairment. 20 C.F.R. §

11   404.1520a(d)(1) and 416.920a(d)(1). If the ALJ rates the first three functional areas as none or

12   mild and the fourth area as none, then generally the impairment is not considered severe. Id.

13   Otherwise, the impairment is considered severe, and the ALJ must determine whether it meets or

14   is equivalent in severity to a listed mental disorder. 20 C.F.R. § 404.1520a(d)(2) and

15   416.920a(d)(2). If the mental impairment does not meet or is not equivalent to any listing, then

16   the ALJ will assess the claimant's RFC.  20 C.F.R. § 404.1520a(d)(3) and 416.920a(d)(3). The

17   ALJ must document use of the special technique by incorporating the pertinent findings and

18   conclusions into the written decision. Id. § 404.1520a(e)(2). The decision must elaborate on

19   significant medical history, including examination and laboratory findings, and the functional

20   limitations that were considered in reaching a conclusion about the mental impairment's severity.

21           When formulating the RFC, the ALJ noted the following:

22       I agree with the several medical doctors who have stated that there are no
         exertional limitations. The psychologists and psychiatrists, including Dr. Engeln,
23       Murillo and Vea have no significant disparity in their opinions. The claimant is
         capable of carrying out simple repetitive tasks in the workplace. The doctors who
24       have discussed the seizure disorder agree that the claimant must have the usual
         seizure precautions, and I certainly concur with that.
25

26   (AR 20).

27           The ALJ summarized Dr. Froehler's report in his decision and noted that Plaintiff "has

28   substantial impairment in memory," but did not address Dr. Froehler's opinion that Plaintiff

                                                      9

1  "will need aids to encode new information." (AR 17-18).

2  Defendant has cited to <u>Stubbs–Danielson v. Astrue</u>, 539 F.3d 1169, 1173 (9th Cir. 2008)

3  for the premise that the RFC represents what the claimant can do rather than focusing on a

4  claimant's limitations and that the ALJ properly translated the limitations set forth by Dr.

5  Froehler into the RFC.  Typically the ALJ will translate limitations in memory, concentration,

6  and attention into an opinion about the kind of work a claimant can perform.  For example, a

7  limitation to simple, repetitive work can account for moderate difficulties in concentration,

8  persistence or pace.  <u>See</u> <u>Sabin v. Astrue</u>, 337 Fed. App'x 617, 621 (9th Cir. 2009) (moderate

9  concentration, persistence or pace difficulties consistent with medical evidence that claimant

10 could perform simple and repetitive tasks).  The ALJ translated Plaintiff's condition, including

11 the mental limitations, into the RFC that Plaintiff is "capable of entry level job adjustment, in a

12 context where instructions are unidimensional and normal supervision."  (AR 486). However, the

13 instant case is not analogous to <u>Stubbs-Danielson</u>, because the Court is unable to tell whether Dr.

14 Froehler's opinion is consistent with Dr. Engeln's opinion.

15 The Court is unable to determine whether the other doctors' opinions are consistent with

16 Dr. Froehler's opinion, which found that Plaintiff "has great difficulty with registration and

17 recall, specifically he has significant difficulty with encoding new information. He is able to

18 register three digit spans but cannot do four digit spans or greater. He was unable to encode a

19 new name and address. His registration is one out of five." (AR 457). Dr. Froehler's opinion that

20 Plaintiff "will need aids to encode new information" and has "substantial impairment" of his

21 memory is vague and ambiguous in terms of delineating Plaintiff's work-related functional

22 limitations.

23 An ALJ has a duty to "fully and fairly develop the record and to assure that the

24 claimant's interests are considered." <u>Tonapetyan v. Halter</u>, 242 F.3d 1144, 1150 (9th Cir. 2001).

25 This duty is triggered when there is "[a]mbiguous evidence" or on "the ALJ's own finding that

26 the record is inadequate to allow for proper evaluation of the evidence." <u>Id</u>. Once the duty is

27 triggered, the ALJ must "conduct an appropriate inquiry," which can include "subpoenaing the

28 claimant's physicians, submitting questions to the claimant's physicians, continuing the hearing,

1    or keeping the record open after the hearing to allow supplementation of the record." Id.

2          Furthermore, if Dr. Froehler's opinion was contradicted by the other doctors and was

3    rejected by the ALJ, the ALJ needed to provide legitimate reasons for rejecting it. See Lester v.

4    Chater, 81 F.3d 821, 830-31 (9th Cir. 1995) (citing Andrews v. Shalala, 53 F.3d 1035, 1043 (9th

5    Cir. 1995) ("[T]he opinion of an examining doctor, even if contradicted by another doctor, can

6    only be rejected for specific and legitimate reasons that are supported by substantial evidence in

7    the record.")

8          As Dr. Froehler's opinion is ambiguous, the Court is unable to determine whether it is

9    consistent with Dr. Engeln's opinion and the opinion of the other doctors in the record.

10   Therefore, the ALJ's RFC may constitute a rejection of Dr. Froehler's opinion. If Dr. Froehler's

11   opinion was inconsistent with the RFC, then the ALJ should have provided reasons for the

12   rejection of Dr. Froehler's opinion.

13                    **C.  Further Administrative Proceedings Are Necessary**

14         Remand for further administrative proceedings is appropriate if enhancement of the

15   record would be useful. Benecke v. Barnhart, 379 F.3d 587, 593 (9th Cir. 2004). "Conversely,

16   where the record has been developed fully and further administrative proceedings would serve

17   no useful purpose, the district court should remand for an immediate award of benefits." Id.

18   "More specifically, the district court should credit evidence that was rejected during the

19   administrative process and remand for an immediate award of benefits if (1) the ALJ failed to

20   provide legally sufficient reasons for rejecting the evidence; (2) there are no outstanding issues

21   that must be resolved before a determination of disability can be made; and (3) it is clear from

22   the record that the ALJ would be required to find the claimant disabled were such evidence

23   credited." Id. (citing Harman, 211 F.3d at 1178).

24         Here, the ALJ failed to provide sufficient reasons to reject Dr. Froehler's opinion that

25   Plaintiff has "substantial impairment" of his memory and "will need aids to encode new

26   information." Plaintiff argues that due to the alleged errors made by the ALJ the Court should

27   remand for payment of benefits.

28         The ordinary remand rule provides that when "the record before the agency does not

1  support the agency action, ... the agency has not considered all relevant factors, or ... the

2  reviewing court simply cannot evaluate the challenged agency action on the basis of the record

3  before it, the proper course, except in rare circumstances, is to remand to the agency for

4  additional investigation or explanation." Treichler v. Comm'r of Soc. Sec. Admin., 775 F.3d

5  1090, 1099 (9th Cir. 2014). This applies equally in Social Security cases. Treichler, 775 F.3d at

6  1099. Under the Social Security Act "courts are empowered to affirm, modify, or reverse a

7  decision by the Commissioner '*with or without* remanding the cause for a rehearing.' " Garrison

8  v. Colvin, 759 F.3d 995, 1019 (9th Cir. 2014) (emphasis in original) (quoting 42 U.S.C. §

9  405(g)).  The decision to remand for benefits is discretionary. Treichler, 775 F.3d at 1100. In

10 Social Security cases, courts generally remand with instructions to calculate and award benefits

11 when it is clear from the record that the claimant is entitled to benefits. Garrison, 759 F.3d at

12 1019.

13       The Ninth Circuit has "devised a three-part credit-as-true standard, each part of which

14 must be satisfied for a court to remand to an ALJ with instructions to calculate and award

15 benefits: (1) the record has been fully developed and further administrative proceedings would

16 serve no useful purpose; (2) the ALJ has failed to provide legally sufficient reasons for rejecting

17 evidence, whether claimant testimony or medical opinion; and (3) if the improperly discredited

18 evidence were credited as true, the ALJ would be required to find the claimant disabled on

19 remand." Garrison, 759 F.3d at 1020. The credit as true doctrine allows "flexibility" which "is

20 properly understood as requiring courts to remand for further proceedings when, even though all

21 conditions of the credit-as-true rule are satisfied, an evaluation of the record as a whole creates

22 serious doubt that a claimant is, in fact, disabled. Id. at 1021. Even when the circumstances are

23 present to remand for benefits, "[t]he decision whether to remand a case for additional evidence

24 or simply to award benefits is in our discretion." Treichler, 775 F.3d at 1102 (quoting Swenson

25 v. Sullivan, 876 F.2d 683, 689 (9th Cir. 1989)).

26       In this instance, the ALJ has failed to develop the record to determine whether Dr.

27 Froehler's opinion is contradictory to Dr. Engeln's opinion and the other doctors in the record.

28 Looking at the record as a whole there may be conflicts between the medical opinions.  Remand

1  is appropriate for the ALJ to resolve any ambiguities in Dr. Froehler's opinion, to redetermine

2  Plaintiff's RFC, if necessary, and, if Dr. Froehler's opinion is contradictory to the other doctor's

3  opinions, to provide legally sufficient reasons for rejecting Dr. Froehler's opinion.

4        Based upon the record, the Court cannot determine that the Commissioner would be

5  required to award benefits in this instance because it is unclear whether Dr. Froehler's opinion is

6  contradicted by any of the other physicians and was rejected by the ALJ. The Court finds that

7  there is an outstanding issue that needs to be resolved by the Commissioner; thus, this action

8  shall be remanded for further proceedings consistent with this opinion.

9  **V.     CONCLUSION**

10        Based upon the foregoing, the Court finds that the ALJ erred by failing to provide

11  adequate reasons to reject Dr. Froehler's opinions regarding Plaintiff's mental limitations.  The

12  Court finds that further administrative proceedings are necessary to resolve outstanding issues

13  before a determination of disability can be made.

14        Accordingly, it is HEREBY ORDERED that:

15  1.     Plaintiff's appeal from the administrative decision of the Commissioner is

16         PARTIALLY GRANTED;

17  2.     This action is REMANDED to the Commissioner for further administrative

18         proceedings;

19  3.     JUDGMENT is entered in favor of Plaintiff Juan P. Ortiz and against Defendant

20         Commissioner of Social Security; and

21  4.     The Clerk of the Court is directed to CLOSE this action.

22

23  IT IS SO ORDERED.

24  Dated:   **March 27, 2015**              **/s/ Gary S. Austin**
                                             UNITED STATES MAGISTRATE JUDGE

25

26

27

28

13